JAMES BENNETT *against* NATHANIEL HOWARD, jun.

WRIT of error.

This was an action on the case. The plaintiff alleged in his declaration, that on the 15th of *February*, 1802, he sailed from *New-London*, as a seaman on board the ship *Dispatch*, of which the defendant was master, on a sealing voyage to the *Pacific Ocean*, under an agreement to receive, as wages, a certain share of the profits of the voyage : and that during the voyage, the ship put into the harbour of *West Point*, one of the *Falkland Islands*, barren, uninhabited, and in an intemperate climate. While the ship lay at this island, the plaintiff was ordered to go on shore by the defendant; who afterwards refused to receive him again on board the ship; but, without the fault of the plaintiff, left him, contrary to his will, with nine other seamen, on the island, destitute of provision, and without the necessary means of procuring subsistence : by which his health was impaired, and his time wasted. Which doings of island, and come on board the ship; which the plaintiff refused to do, to show that he had fears of ill usage, then offered to prove particular abuse of the crew, by the inferior officers of the ship. Held, that such evidence was not admissible.

*Margin notes:*

June, 1808.

BUTLER
v.
BUTLER.

It is a sufficient ground of arrest of judgment, that one of the jurors conversed about the cause, while it was on trial, with persons not of the jury.

The plaintiff declared, that the defendant, being master of the ship on board of which the plaintiff was a seaman, left the plaintiff, contrary to his will, on a desolate island in the *South Sea*. The defendant proved, that he commanded the plaintiff to leave the island. The plaintiff, instances of

the defendant were averred to be fraudulent and malicious; and with a design to deprive the plaintiff of his share of the profits of the voyage.

The cause was first tried, on the general issue, at *Hartford, November* term, 1806. A verdict was found for the plaintiff. The defendant moved in arrest of judgment;

1. For the insufficiency of the declaration.

2. For that one of the jurors, empannelled in the cause, and who joined in the verdict, freely conversed about the case, while it was on trial, with other persons, not of the jury, publicly declaring that the defendant's conduct could not be justified; and gave his opinion in favour of the plaintiff, before the testimony had been received, and the cause argued.

3. For that one or more of the jurors, being opposed to the verdict, as first returned, and finally accepted, at last agreed to join in the verdict, after the jury had been returned to a second and third consideration, upon a mistaken apprehension, that after having once come in with a verdict, he could not deny his assent to it again, and on that ground, only, he assented to the verdict.

To the first reason, the plaintiff replied, that his declaration was sufficient.

To the second reason, that the matters contained therein were untrue, and insufficient.

And to the third reason he demurred.

The court adjudged the declaration sufficient. As to the second reason, the court found, *that one of the jurors,*

*empannelled and sworn in the cause, and who joined in the*
*verdict, freely conversed about the case, while it was on*
*trial, with other persons, not of the jury;* but that the
other facts alleged in the second reason were not true.
The third reason was adjudged sufficient.

The verdict was set aside, and the cause ordered for a
further hearing. It was again tried, on the general is-
sue, *February* term, 1807.

The defendant, to rebut the charge that he would not
suffer the plaintiff to come again on board the ship,
but left the plaintiff on the island of *West Point*, against
his will, now produced sundry witnesses, who testified,
that the defendant commanded the plaintiff, and the
other persons who were on the island, to come on board
the ship, which the plaintiff and the other persons re-
fused to do. It was proved, that when the order to
come on board was given the plaintiff and his companions
on the island, they replied that they were willing to
do their duty, on board the ship, if the defendant would
oblige himself to them that they should have their *lays*
(shares of the profits) at the end of the voyage, and
that they should receive good usage on board. And to
show that the plaintiff and his companions had appre-
hensions of ill usage, the plaintiff offered evidence to
prove, that during the voyage, and before the ship
arrived at the island of *West Point*, the crew had suf-
fered extreme ill usage from the officers; particularly,
that *John Howard*, the second mate, had, without pro-
vocation, beaten two of the seamen with such severity
as occasioned their deaths; and that he had seriously
wounded three others, without being punished, or re-
primanded for it, by the defendant; although the facts
were within the defendant's knowledge; which the
plaintiff also offered to prove. And that those were
the reasons why the plaintiff, and the other seamen who

June, 1808. were left, ought to have security for future good usage.
To this evidence the defendant objected ; and the court
BENNETT ruled, that it was inadmissible.  A verdict was found for
v. the defendant, and the plaintiff filed his bill of excep-
HOWARD. tions.

The errors assigned were, first, That the allegations
in the second reason contained in the defendant's motion
in arrest of judgment, which the court found to be true,
ought to have been adjudged insufficient.  Secondly,
That the allegations in the third reason contained in the
plaintiff's motion in arrest, were also insufficient.
Thirdly, That the evidence offered by the plaintiff at
the second trial of the cause, and rejected by the court,
ought to have been admitted.

*Ingersoll* and *Bradley*, for plaintiff in error.  The al-
legation in the motion in arrest, that " one of the jurors
conversed freely about the case, while it was on trial,"
is too general.  A juror may lawfully speak *about* the
cause, if what he says does not relate to its merits.
Thus, he has a right to relate who the *parties* are; to
say that the jury have agreed on a verdict; or any thing
else, which does not, in the language of the juror's oath,
concern " the business and matter they have in hand."
The allegation found, by the court, to be true is, in-
deed, not traversable.  The only material allegation is
negatived by the finding of the court.

The last exception is, merely, that the juror concurred
in the verdict, in consequence of his ignorance of the
law.  But this averment cannot be made ; for the de-
fendant is estopped by the record, which is as conclu-
sive of his voluntary concurrence in the verdict, as it is
of the judges' concurring in the judgment.

The evidence offered by the plaintiff, as stated in the
bill of exceptions, is not to prove the averments in the

declaration; to explain the fact proved by the defendant, that the plaintiff refused to comply with his order to come on board the ship; and therefore remained voluntarily on the island: It is to show, that to stay on shore was resorted to as an expedient less dangerous than to return to the ship; which the plaintiff offered to show he could not do, without hazard of his life. For this purpose the evidence was admissible.

June, 1808.

BENNETT
v.
HOWARD.

1. Because the cruelties exercised upon the crew by the inferior officers of the ship, were chargeable upon the plaintiff; since, when they came to his knowledge, he refused to restrain them.

2. Because circumstances might exist of such a nature as would justify the plaintiff in refusing to return on board, without being assured of proper treatment. What these circumstances were, he had a right to show.

*Daggett* and *Terry*, for the defendant in error.

BY THE COURT. The oath of jurors obliges them to " speak nothing to any one concerning the matters they have in hand, but among themselves, nor suffer any to speak to them about the same but in court, until the verdict is delivered up in court."(a)

In this case, the court below found, that one of the jurors conversed freely with persons not of the jury, about the case, while it was on trial. This was directly contrary to his oath. To suffer such practice to obtain, would be of very dangerous tendency, by opening the way to corrupt the streams of justice; and would destroy all confidence in the trial by jury.

(a) *Stat. Conn.* tit. 122. c. 1. s. 13.

June, 1808.

BENNETT
v.
HOWARD.

The testimony offered, and rejected by the court, was wholly inadmissible. The gist of the action, as laid in the declaration, is the leaving the plaintiff, contrary to his will, upon a desolate island, in the *South Sea*, by the defendant; which the defendant attempted to show was not true, by proving that he invited, and even commanded, the plaintiff to come on board, and proceed on the voyage.

The plaintiff, by the testimony offered, and rejected, attempted to show another cause of action, viz. that he was unwilling to return on board the ship, and proceed on the voyage, through fear of abuse and ill usage. It could have no tendency to show or establish the facts alleged in the declaration, or put in issue; and would have led to an inquiry into facts out of the case, which might have had a very improper influence on the minds of the jury.

Judgment affirmed.